# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

TRUSTGARD INSURANCE COMPANY,

    Plaintiff,

v.

ALSTON DANIELS, PNC BANK, and
WILMINGTON TRUST,

    Defendants.

CIVIL ACTION NO.: 4:19-cv-130

## O R D E R

Plaintiff Trustgard Insurance Company brings this lawsuit to clarify its obligations under an insurance policy. (See Docs. 1, 19.)[1] Presently before the Court is Defendant Alston Daniels' Motion to Vacate Entry of Default, (doc. 12). Plaintiff filed a Response in opposition, (doc. 13), and Daniels filed a Reply, (doc. 15). For the reasons set forth herein, the Court **GRANTS** Daniels' Motion and **DIRECTS** the Clerk of Court to **VACATE** its Entry of Default as to Defendant Daniels, (doc. 10).

## BACKGROUND

### I.    Factual Background

Defendant Daniels is a Florida citizen who owned a home in Savannah, Georgia (the "Savannah Property") with his late husband, George Elliot. (Doc. 19, pp. 2–3.) After Elliot's death in January 2019, Daniels became the sole owner of the Savannah Property. (Id. at pp. 3–4.) The couple also had a residence in Florida. (Id. at p. 13.) In 2015, Plaintiff issued a homeowner's policy (the "Policy") to Elliot for the Savannah Property, (id. at p. 12), identifying Defendant PNC

---

[1] As explained herein, Plaintiff filed an Amended Complaint on December 27, 2019. (Doc. 19.)

Bank as the mortgagee, (id. at pp. 2–3). Although Elliot and Daniels "jointly owned the Savannah Property, . . . Daniels is not a named insured under the [Policy]." (Id. at p. 20.) In January 2018, the Savannah Property sustained significant water damage while Daniels and Elliot were at their Florida residence. (Id. at pp. 12–13.) The couple first saw the property damage on April 1, 2018 and reported the incident to Plaintiff on June 14, 2018. (Id. at p. 14.) Pursuant to its investigation of the matter, Plaintiff examined Daniels under oath on March 1, 2019; Daniels' attorney, Edward Eshoo, was present at the examination.[2] (Doc. 13, p. 2.)

On June 13, 2019, Plaintiff initiated this action to clarify its obligations to Daniels under the Policy. (Doc. 1.) Plaintiff served Daniels with process on June 18, 2019. (Doc. 6.) On June 27, Eshoo emailed Plaintiff's counsel, Brian Sprinkle, to ask whether Sprinkle had time to discuss the lawsuit. (Doc. 13, p. 2.) Sprinkle and Eshoo spoke via telephone on July 1 and, on July 7, Sprinkle emailed Eshoo stating that Plaintiff was "willing to discuss settlement of the claim/declaratory judgment action at this time." (Doc. 13-1, p. 12.) Sprinkle also requested that Daniels make a "reasonable settlement request," and Eshoo responded with Daniels' demand on July 9. (Id.) On July 11, Sprinkle sent an email to confirm that Daniels' demand was for the "full, final, and complete resolution of any and all claims against the policy" and asked Eshoo to send "the Answer that Daniels filed with the Court." (Id. at p. 11.) Eshoo replied several hours later and said Daniels had "not answered yet." (Id.) On July 23, Sprinkle notified Eshoo that, because Plaintiff "was not interested in a settlement that [did] not involve the mortgage company," he intended to file "a motion to add the mortgage company as a party to the declaratory judgment action." (Id. at p. 10.)

---

[2] Eshoo's office is in Chicago, Illinois. (Doc. 15-1, p. 1.)

2

On July 31, Plaintiff filed a Motion for Leave to Add Parties and Amend Complaint (at times, the "Motion to Amend"). (Doc. 8.) In the Motion, Plaintiff explained that a "review of the property records" revealed that PNC Bank "granted, assigned, and transferred the security deed" to Defendant Wilmington Trust on July 3, 2019. (Id. at p. 2.) Plaintiff also noted that Daniels did not file a timely "Answer or responsive pleading." (Id.) In light of Daniels' default and the deed transfer, Plaintiff sought leave to add PNC Bank and Wilmington Trust as "required parties" and assert claims against them via Amended Complaint. (Id.; doc. 8-2.) The same day—July 31—Eshoo emailed Sprinkle to inquire about the "status [of] settlement." (Doc. 15-1, p. 3.) Sprinkle responded on August 5, indicating Plaintiff's desire to resolve all coverage issues "at the same time." (Id.) Sprinkle said to "let him know" if Eshoo had "direct contact with someone at [PNC Bank] that has [settlement] authority," but that the parties could also "discuss settlement once the two banks are added to the declaratory judgment action and have filed responsive pleadings." (Id.) On August 7, Plaintiff filed a Motion for Entry of Default as to Daniels, (doc. 9), and default was entered by the Clerk of Court because Daniels had yet to "appear, plead[,] or otherwise defend" the claim against him, (doc. 10). Daniels subsequently obtained local counsel who filed a Notice of Appearance, (doc. 11), and the at-issue Motion to Vacate Entry of Default, (doc. 12), on August 29. Plaintiff filed a Response in opposition, (doc. 13), and Daniels filed a Reply, (doc. 15), in tandem with a Proposed Answer, (doc. 15-3).

The Court granted Plaintiff's Motion to Amend on December 17, 2019, (doc. 18), and Plaintiff filed its Amended Complaint on December 27, (doc. 19). The Amended Complaint mirrors the proposed version, but further alleges that Wilmington Trust purchased the property at a foreclosure sale on October 1, 2019. (Id. at p. 17.) It also states that on October 25, 2019, PNC Bank notified Plaintiff of a claim under the Policy, alleging that the Savannah Property sustained

3

additional damage on June 28, 2019. (Id. at p. 19.) As such, Plaintiff requests declarations of its rights and obligations under the Policy as to all three Defendants. (Id.) On January 1, 2020, Daniels answered[3] and asserted a counterclaim against Plaintiff for breaching the terms of the Policy. (Doc. 25.)

**II.    Daniels' Motion to Vacate the Entry of Default**

As noted above, Daniels' default was entered on August 7, 2019, (doc. 10), and he filed the at-issue Motion twenty-two days later, (doc. 12). In his Motion, Daniels argues there is good cause to set aside the entry of default because Eshoo and Sprinkle's communications show that he and Plaintiff "had been discussing a potential resolution of [the] matter" since its initiation. (Id. at p. 1.) Daniels avers these "earnest" negotiations and his rapid response to the entry of default show that his conduct was not "willful or an intentional disregard of the judicial system." (Doc. 15, p. 1.) He also argues that Plaintiff will not be prejudiced if his default is set aside, particularly because it initially failed to "name all parties necessary to the action." (Id. at p. 3.) Finally, Daniels maintains that the denial of his Motion would cause irreparable harm because his "rights and liabilities . . . would be determined without him." (Id.) In response, Plaintiff argues that settlement discussions do not negate a party's obligation to comply with the Federal Rules of Civil Procedure and that Daniels failed to otherwise show he is entitled to relief. (Doc. 13.) For the reasons set forth below, the Court agrees with Daniels and finds good cause to set aside his entry of default.

---

[3]  The docket refers to this filing as Daniels' "Amended Answer to Plaintiff's Amended Complaint and Counterclaim," (doc. 25), because Plaintiff attached a Proposed Answer and Counterclaim to his Reply brief, (doc. 15).

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."[4] However, "[a] clerk's entry of default, pursuant to Rule 55(a), is distinct from a *judgment* by default entered . . . pursuant to Rule 55(b)." Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 n.5 (11th Cir. 2007) (per curiam) (emphasis added). This distinction is important; a court may only vacate a default judgment "in accordance with Rule 60(b)," which is a "more rigorous standard" than that used to "set[] aside an entry of default." EEOC v. Mike Smith Pontiac GMC, Inc., 896 F.2d 524, 528 (11th Cir. 1990) (citing Fed. R. Civ. P. 55(c)). Under Rule 55(c), an entry of default may be set aside upon a showing of "good cause." See id. "Good cause is a mutable standard, varying from situation to situation. It is also a liberal one—but not so elastic as to be devoid of substance." Compania Interamericana Exp.-Import, S.A. v. Compania Dominicana de Aviacion, 88 F.3d 948, 951 (11th Cir. 1996) (citation and internal quotation marks omitted).

There is no precise formula for assessing whether there is "good cause" to set aside an entry of default, and the Eleventh Circuit Court of Appeals has instructed that the factors "applicable in a given case" will vary "[d]epending on the circumstances." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1337 n.7 (11th Cir. 2014) (citation omitted). For example, common factors include whether the at-issue default "was culpable or willful, whether setting it aside would prejudice the non-moving party, and whether the defaulting party may have a meritorious defense." Id. Courts have also considered "whether the defaulting party acted promptly to correct the

---

[4] A party must "serve an answer within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(l)(A)(i).

default" and whether the default could result in significant financial loss to the defaulting party. Id. Regardless of which factors are employed, the Court must weigh them against the "strong policy of determining cases on their merits." Valdez v. Feltman (In re Worldwide Web Sys.), 328 F.3d 1291, 1295 (11th Cir. 2003). Indeed, defaults are disfavored, and the Eleventh Circuit has cautioned that a litigant should be afforded "his or her day in court, if possible." Perez, 774 F.3d at 1342.

## DISCUSSION

In this case, all of the applicable factors weigh heavily in favor of vacating Daniels' default.[5] First, Plaintiff has not shown—or even argued—that it would suffer prejudice should the entry of default be set aside. See Griffin IT Media, Inc. v. Intelligentz Corp., No. 07-80535-CIV, 2008 WL 162754, at *3 (S.D. Fla. Jan. 16, 2008) (quoting Burrell v. Henderson, 434 F.3d 826, 835 (6th Cir.2006) ("Delay in adjudicating a plaintiff's claim does not qualify as sufficient prejudice under Rule 55. Instead, [a plaintiff] would have to show that the delay would result in a loss of evidence, increased opportunities for fraud, or discovery difficulties."). To the contrary,

---

[5] Indeed, the Court has rarely seen a case where an entry of default should so clearly be vacated. It is disappointing that the parties were not able to resolve this issue without Court intervention. Considering counsel's ongoing settlement discussions at the time of Daniels' default and the fact that Plaintiff contemplated amending its Complaint, the Court would have expected counsel to have discussed Daniels' default status even prior to moving for entry of default. The Court forewarns the parties that while it expects counsel to know and abide by the Federal Rules of Civil Procedure as well as this Court's Local Rules and Orders, litigation is not meant to be a game of "gotcha." In the future, the Court expects counsel to work together to resolve issues where possible prior to coming to the Court for assistance. Additionally, counsel's briefing on the Motion to Vacate is suboptimal. Daniels' Motion to Vacate Entry of Default, (doc. 12), should have contained far more support and authority such as that included in his Reply, (doc. 15). For Plaintiff's counsel's part, its Response, (doc. 13, p. 5), represented that "this case is very similar to" African Methodist Episcopal Church, Inc. v. Ward, 185 F.3d 1201, 1202 (11th Cir. 1999). (Doc. 13, p. 5.) This is a stretch. In Ward, the defaulting defendants intentionally disregarded their obligation to respond to the complaint despite having been specifically apprised of the same, and they did not seek to set aside the default until more than a year after they had been served and after default judgment had already been entered against them. 185 F.3d at 1202. Those salient facts simply are not present here.

Plaintiff's overall conduct indicates that it was not harmed by Daniels' delay and would not be harmed by vacating the entry of default. Plaintiff's addition of PNC Bank and Wilmington Trust as parties and the assertion of claims against them demonstrate Plaintiff's intention to pursue this litigation regardless of Daniels' status in the action. Compare Cheney v. Anchor Glass Container Corp., 71 F.3d 848, 850 (11th Cir. 1996) (no prejudice because non-moving party's activity in matter showed default did not delay proceedings), with Yang v. Worrell, 512 F. App'x 997, 1000 (11th Cir. 2013) (per curiam) (prejudice found where lack of activity gave plaintiff impression that matter was concluded). Moreover, Plaintiff seeks nearly identical relief as to all three Defendants—a declaration that each person or entity is not entitled to coverage under the Policy—and Sprinkle's emails to Eshoo expressly state Plaintiff's willingness to resolve its three claims at the same time. (See Doc. 19; doc. 15-1, p. 3.) As such, vacating Daniels' default will not require Plaintiff to engage any additional discovery or other efforts. Further, vacating Daniels' default will also not disrupt or delay Plaintiff's pursuit of its claims because this litigation is still in its earliest stages with Wilmington Trust having only filed its Answer, (doc. 33), seven days ago. Thus, allowing Daniels to litigate the merits of his claim would not adversely impact Plaintiff or the "efficient judicial administration." See Cheney, 71 F.3d at 850.

Daniels' conduct also evinces a consistent desire to defend rather than an "intentional or willful disregard for the judicial proceedings." See Perez 774 F.3d at 1337 n.7. Despite his failure to file an Answer, Daniels engaged in settlement discussions with Plaintiff, acted quickly to remedy the entry of default, and responded to Plaintiff's Amended Complaint in a timely manner. After receiving the Complaint, Daniels informed Eshoo, the attorney who represented him in the ongoing insurance dispute with Plaintiff. (See Doc. 13-1, pp. 10–13.) Eshoo and

Sprinkle then discussed settlement via telephone and in an email exchange that spanned from June 27 through August 5, 2019. (Id.; doc. 15-1, p. 3.) Further, it does not appear that Daniels was aware that he was in default until receiving Plaintiff's Motion for Entry of Default. After learning of his default, Daniels promptly retained a local attorney and filed the at-issue Motion. (Doc. 12.) He also filed a timely response to Plaintiff's Amended Complaint. (Doc. 25.) This conduct, taken as a whole, does not reflect a pattern of delay or lack of compliance and demonstrates Daniels' continued intent to defend Plaintiff's claim against him. See Compania, 88 F.3d at 951–52; Idearc Media LLC. v. Kravitz Law Grp., P.A., No. 8:09-CV-02078-T-17AE, 2010 WL 2179122, at *5 (M.D. Fla. May 7, 2010), adopted by, 2010 WL 2179109 (M.D. Fla. June 1, 2010) (defendant did not act in "reckless disregard" where "it acted promptly once settlement negotiations broke down"); see also Fed. Trade Comm'n v. MOBE Ltd., No. 618CV862ORL37DCI, 2019 WL 3503285, at *3 (M.D. Fla. Apr. 19, 2019) (any willfulness of failure to respond tempered by quick response to default and continued participation); Burrell, 434 F.3d at 835 (court vacated default when defendant moved to set aside less than three weeks after clerk's entry); cf. Annon Consulting, Inc. v. Bionitrogen Holdings Corp., 650 F. App'x 729, 732 (11th Cir. 2016) (per curiam) (finding intentional disregard for judicial process where party chose to negotiate settlement rather than appear in suit and continually declined to remedy default despite notice).

While the Court takes seriously the obligations of parties and their counsel to read and know the procedural rules applicable to the forums in which they litigate, Daniels' default was not culpable and is excusable under Rule 55(c) "good cause" standard. See Perez, 774 F.3d at 1339 ("[A] party's claims should not be subjected to default under a standard higher than that

applicable to default."); Cheney, 71 F.3d at 850 (no bad faith where counsel's actions not intended to delay action and were attributable to negligence or carelessness). Indeed, Daniels retained counsel regarding this matter and notified that attorney of this lawsuit. It appears any failure to answer was due to his prior counsel's indolence, not any carelessness or disregard by Daniels.

Finally, the Court finds that Daniels may have a meritorious defense. Under this factor, a "[l]ikelihood of success is not the measure." Keegel v. Key West & Caribbean Trading Co., 627 F.2d 372, 374 (D.C. Cir. 1980). Instead, the movant need only provide "a hint of a suggestion" that his case has merit. Moldwood Corp. v. Stutts, 410 F.2d 351, 352 (5th Cir. 1969) (per curiam).[6] Here, Daniels disputes Plaintiff's interpretation of the Policy and argues that, because he complied with the provisions therein, he is entitled to coverage. (See Docs. 15-1, 25 (denying numerous factual allegations in Complaint and Amended Complaint and asserting Counterclaim).) While his assertions are not expansive, they are enough to find that Daniels has at least "hint[ed]" at a meritorious defense. See Moldwood, 410 F.2d at 352.

In light of the specific facts surrounding Daniels' default and the Eleventh Circuit's strong preference for "determining cases on their merits," the Court finds that the foregoing factors provide "good cause" to set aside Daniels' default under Rule 55(c). See Perez, 774 F.3d at 1339 (internal quotation marks omitted). Accordingly, the Court **GRANTS** Daniels' Motion.

---

[6] In Bonner v. City of Prichard, 661 F. 2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**CONCLUSION**

For the reasons set forth above, the Court **GRANTS** Defendant Daniels' Motion to Vacate Entry of Default, (doc. 12), and **DIRECTS** the Clerk of Court to **VACATE** its Entry of Default as to Defendant Daniels, (doc. 10).

**SO ORDERED**, this 14th day of February, 2020.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA